(Decided 22d March, 1872 )

THE HAGERSTOWN BANK, use of SOLOMON FIERY, *vs.* JOHN HANSON THOMAS, J. HOLKER HUGHES, and others.

## *How a Judgment may be kept alive.*

By issuing within three years from the date of a judgment, a writ of *fieri facias* thereon, " to lie," and renewing it from term to term, though never delivering it to the sheriff, the judgment may be kept alive and operative for an indefinite period.

APPEAL from the Circuit Court for Washington County, in Equity.

The Hagerstown Bank obtained two judgments against Jacob Hollingsworth, on the 14th of April, 1846, each for the sum of $750, in the Court below. The Washington County Bank and John Hanson Thomas, two of the appellees, also obtained judgments in said Court against said Hollingsworth, the former on the 12th of November, 1866, and the latter on the 26th of December, 1861 ; Thomas' judgment was revived on. *scire facias*, by fiat, November 25th, 1867. On the 23d of March, 1849, writs of *fieri facias*, " to lie," were issued on the judgments of the Hagerstown Bank, and corresponding entries were made upon the dockets. These writs were regularly re-issued, " to lie," from term to term of the Court, up to the time of the death of said Hollingsworth. Neither

the first, nor any of the succeeding writs were ever placed in the hands of the sheriff, nor were returns ever made by him to any of them; as the writs were issued by the clerk, they were placed by him in the bundle of the judicials of the term to which they were issued. Jacob Hollingsworth died intestate on the 14th of March, 1868, and some time in April, thence immediately following, a creditors' bill was filed for the sale of his real estate. The sale was made, and part of the proceeds brought into Court and distributed by the auditor's account to the two judgments of the Hagerstown Bank, which before had been assigned to Solomon Fiery, and which had been filed against said fund on the first of May, 1868, as claims having priority, being the oldest judgments against said Hollingsworth.

Exceptions were filed to this account by the appellees, and the Statute of Limitations was relied upon and pleaded as a bar to said judgments, more than twelve years having elapsed since their rendition. The Court (ALVEY, J.,) passed an order sustaining the exceptions, and disallowing the judgment claims in so far as they affected the rights and claims of the exceptants thereto.

From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*William T. Hamilton,* for the appellant.

The question in this case is whether the Statute of Limitations, interposed by the appellees, is a bar to the claim of the appellant? It is interposed upon the ground that the first executions issued upon the judgments were never returned by the sheriff, and that therefore all the subsequent issues and docket entries "to lie," were of no avail in keeping the judgments alive; and it is upon this single point that the whole question revolves; for it is admitted that all the executions issued regularly to each term of the Court until the filing of

the same in these proceedings, and the first ones issued within three years from the rendition of the judgments.

By the practice in England, after a year and a day, there was a presumption that the plaintiff had released his execution upon the judgment. But to rebut this presumption, he could issue in that time, and have it returned and filed, and continuances entered from the time of issuing it; and this would keep alive the judgment for an indefinite time, and he could at any time have an effective execution. These continuances were not required, under the English rule, to be entered at the time, but at any time could be made up when an effective execution was wanted. This issue and entries constituted a continuing demand, and therefore a thing in action by which the Statute of Limitations was avoided. In this State the practice varies somewhat from that in England. Here the mode is to renew the execution every Court.

The docket entries are made as if the execution really issued, and the words "to lie" added. Generally the execution is drawn out at length—the proper indorsements, with the words "to lie" put upon it, and then filed away among the judicials of that term to which it issued—this is the practice in the Court below.

The object of this execution, "to lie," in Maryland, is to keep alive the judgment, so that an effective execution may be had after the expiration of the three years from its rendition—it keeps the judgment a thing in action, and therefore avoids the Statute of Limitations.

This issuing of an execution, and the renewal thereof from term to term, is a continuing demand upon the defendant, whilst at the same time it is a notice to all the world of an existing incumbrance.

The writs in this case are issued in every respect regularly and formally—they are found as issued upon the judgments, and also docket entries made of them—the number of each writ given—term of the Court, and the writs are found in the

bundle of the judicials just as the reference upon the docket and judgment is made.

Will not all the intendments be that they were issued and regularly returned, if such return should be decided to be necessary?

All subsequent creditors had notice of the judgments and docket entries — they contracted with this knowledge, and now to be allowed to take advantage of the kindness of the appellant in permitting the deceased to remain unmolested all this time, upon no rational cause in the law, and certainly no equitable one, would indeed be a hard case.

*George Schley,* for the appellees.

In this case no execution was ever returned—none ever went into the sheriff's hands; and unless the first execution was returned by the sheriff, who alone was competent to do so, there was nothing to warrant the entry of continuances on the roll, 6 *Bac. Abridgt.,* 107; 2 *Wils.,* 82; 2 *Saund. Rep.,* 68, (*e.;*) and in this State, nothing to warrant the issue of a second or other execution, or even a summons on mesne process. *Mullikin vs. Duvall,* 7 *G. & J.,* 359; *Hazlehurst vs. Morris,* 28 *Md.,* 75.

The sheriff's return to the first execution being indispensable, as the foundation for the subsequent writs of *fi. fa.,* and such return not having been made, there was a "total suspension of final process upon the judgment, and the succeeding issues 'to lie' are therefore of no effect in avoiding the Statute of Limitations pleaded in this cause."

This conclusion, in regard to keeping judgments alive by the issue of final process, is fortified by the manner of continuing writs on mesne process to save the Statute, which cannot be done unless the first writ be returned by the sheriff *non est inventus,* and filed.   2 *Saund. R.,* 68, (*e.,*) and authorities there cited; *Brown vs. Babington,* 2 *Ld. Rayd.,* 880; *Atwood vs. Burr,* 7 *Mod.,* 5; *Karver vs. James, Willes' Rep.,* 255; *Harris vs. Woolford,* 6 *Term,* 617; 2 *Saund. R.,* note

(6,) *p.* 63, (*d.,*) (*e.;*) 1 *Tidd's Prac.*, 162; *Baskins vs. Wilson*, 6 *Cow.*, 471.

The same reason applying to mesne process, and final process, the like practice must also apply. With what propriety can any writ be said to be a renewal, unless a first has previously been issued and returned, when it is the return, and *only the return by the sheriff*, that gives the Court possession of the cause and justifies its renewal? If therefore in mesne process, to save the Statute, it is necessary to show a writ sued out within the time of limitation, and regular renewals thereof from term to term, down to the effective writ, and if in "final process" a *fi. fa.* must be issued within execution time, and be returned, and then regularly renewed from term to term, to keep alive the judgment, what status has the appellant, who can shew no *fi. fa.* returned, and, of course, no renewals of an *unreturned fi. fa.?*

ROBINSON, J., delivered the opinion of the Court.

In 1846 the Hagerstown Bank recovered two judgments against Jacob Hollingsworth, and within three years after the rendition of the same, *executions were issued thereon to lie.* Writs of execution were *reissued to lie,* from term to term of the Court, up to the time of the death of the said Hollingsworth, which occurred in 1868 ; and the question is, whether these judgments are barred by the Statute of Limitations, which provides, "that no judgment shall be good and pleadable or admitted in evidence after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action, above twelve years standing?" *Art.* 57, *sec.* 3, *Code of Pub. Gen'l Laws.*

At the common law, a judgment in a personal action, was presumed to be executed or satisfied after the lapse of a year and a day from its date, and unless the plaintiff sued out execution within that time he was obliged to bring a new action on the judgment. This however was remedied by the Statute of Westminister, 2, which provided for the renewa

of such judgments after the lapse of a year by *scire facias*. But if execution was sued out within a year and not *executed*, a new writ could issue at any time afterwards without a *scire facias*, provided the first writ was returned, and continuances entered on the rolls of the Court, connecting it with the effective writ. In such cases the suing out of the original execution and the return thereof, and the entry of continuances, operated as a continuing demand of the plaintiff's claim and repelled the presumption of satisfaction arising from lapse of time. The return of the original execution however was necessary as a foundation for the entry of continuances, and the continuances were necessary in order to connect the first with the effective execution.

That a judgment may be kept alive in this State, so as to avoid the Statute of Limitations by conforming substantially to a practice of this kind, we consider settled by *Mullikin vs. Duvall,* 7 *G. & J.,* 358. After quoting the language of the statute, the Court say :

" It is true, that a judgment may be kept alive, and in full legal operation for an indefinite period of time, by issuing an execution upon it within a year and a day by the law of England, and within three years by the law of this State, and if such writ is not effective, by renewing it from term to term."

In this case, the execution instead of being delivered to the sheriff, and returned by him *unexecuted* in accordance with the directions of the plaintiff, was *endorsed to lie* and *filed* with the *judicial writs of the term to which it was issued,* and then *re-issued to lie* from term to term. From the evidence of the clerk, such appears to have been the uniform practice of the Court in regard to the issuing of executions for the purpose of keeping a judgment in full legal operation, and so far as we are advised, it is in conformity with the practice in other circuits of the State.

In what respect then, does it differ in principle from the English practice? Under both, the issuing of the execution is the act altogether of the plaintiff, of which the defendant has

only the *constructive notice* with which judicial proceedings effect both parties and strangers alike. Under neither is it issued to enforce payment of the judgment, but for the sole purpose of keeping it alive, by a continuing demand of the plaintiff's claim. Under the English practice the return of the execution was necessary in order to make the continuances on the roll, connecting it with the effective writ. By the practice in this case however no return is necessary, because being issued to lie, and filed in Court, the writ never goes into the hands of the sheriff, and inasmuch as the record shows that it has never been executed, the plaintiff may renew the same until the judgment is paid. There is no magic certainly in the mere delivery of the execution to the sheriff with instructions to return it immediately *unexecuted,* and if the English practice keeps the judgment in full legal operation by a continuing demand of the plaintiff's claim, we see no good reason why the practice pursued in the case before us should not have the same effect. After all, the practice in both cases rests upon the legal fiction, that the plaintiff has issued his successive writs of execution, which from no fault on his part have proved unavailing—thus giving to the legal fiction, though contrary to the fact, the force and effect of actual facts, so long as it works no injustice to parties.

In regard to *original* and *mesne* process, the return of the writ was necessary, because until returned the Court was not in fact in *possession of the case.* *Atwood vs. Burr,* 7 *Mod.,* 5 ; *Karver vs. James, Willes' Rep.,* 255 ; *Harris vs. Woolford,* 6 *T. R.,* 617, and *Brown vs. Babbington,* 2 *Lord Ray.,* 880. In order to avoid the Statute of Limitations of James II, a practice grew up of suing out an original writ and having it returned *non est,* and subsequently when the plaintiff wanted the defendant taken, a second writ was issued, and continuances entered on the roll, connecting it with the original writ. Under this practice, the Courts held that the suing out of the original writ, was the commencement of the suit, and thus avoided the statutory bar. In such cases however, the original

writ was purchased out of the High Court of Chancery, and was directed to the Court of Common Pleas, and until returned, the case was not in fact pending in the latter Court. Thus in *Atwood vs. Burr*, 7 *Mod.*, 5, HOLT, C. J., says:

"That upon pleading the Statute of Limitations, he always used to plead the return and not the purchase of the writ; for it was the return that gave the possession of the cause to the Court." Until the return therefore, no entry could be made of continuances connecting the *original* with the *effective writ*.

Moreover in original process the writ was sued out for the purpose of impleading the defendant and "It would be greatly inconvenient," says WILLES, Ch. J., in *Karver vs. James, Willes' Rep.*, 258, "if a plaintiff might sue out a writ and keep it in his pocket for six years together, of which the defendant could not possibly have any notice, and then enter it in this manner and continue it down to avoid the Statute."

*Final process* however, is issued upon a judgment already *recovered in Court*, not for the purpose of enforcing payment of the same, nor to implead the defendant, but in order to keep it alive by a continuing demand of the debt, and there is no reason why the issuing of the writ to lie, and the renewal thereof from term to term should not be as effectual for all these purposes, as the delivery of it to the sheriff, and the return of the same, and the entry of continuances on the roll.

We are of opinion therefore that the practice pursued in this case conforms *substantially* to the practice recognized in *Mullikin vs. Duvall*, 7 *G. & J.*, 355, and *Hazlehurst vs. Morris*, 28 *Md.*, 67, and that the Court erred in sustaining the exceptions to the allowance of these judgments, on the ground that they were barred by the Statute of Limitations.

*Order reversed and*
*cause remanded.*

(Decided 3d May, 1872.)