William Thomson & Bro.
*vs.*
Benjamin F. Beveridge.

{ Decided March 17, 1884.
{ The Chief Justice and Justices Cox and James sitting.
Law.　No. 7,332.

A *fi. fa.* cannot issue on a judgment of this court after twelve years have elapsed since the last proceeding taken to enforce the judgment.

The Case is stated in the opinion.

Carusi & Miller and Francis Miller for plaintiff.

Leon Tobriner for defendant.

Mr. Justice Cox delivered the opinion of the court.

The plaintiffs, on the 6th of June, 1870, brought suit in this court against the defendant, and on the 1st of March, 1871, recovered a judgment for $178, with interest and costs. On the 11th of May, 1871, some two months after the rendition of the judgment a writ of *fi. fa.* was issued, which, on the 11th of July, 1871, was returned *nulla bona.* On the 3d of September, 1883, which was a little more than twelve years after the return of *nulla bona,* at the instance of the plaintiff, continuances were entered upon the docket from the date of the last return up to the date in question, and a new *fi. fa.* was issued on the judgment, which was levied upon the lands of the defendant. He, thereupon, on the 1st of November, 1883, filed his motion to quash the writ, and on the 24th of that month the court below granted the motion, from which action an appeal was taken to this court.

The ruling of the court below was founded upon the act of assembly of Maryland of 1715, chap. 23, sec. 6, which is in the following words:

"No bill, bond, judgment, recognizance, statute merchant or of the staple, or other specialty whatsoever, except such

as shall be taken in the name or for the use of our sovereign lord the king, his heirs and successors, shall be good and pleadable, or admitted in evidence, against any person or persons in this province, after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing."

On the part of the plaintiff, on the other hand, it is maintained that this is simply a statute of limitations which bars a prosecution of any action upon a judgment after the expiration of twelve years, but does not prevent the entering up of continuances and the issue of new executions after that time.

This is an interesting question of practice, and it is very remarkable that it has never been decided by this court, or by the court of appeals of Maryland, nor has the question ever been disposed of, in this shape, in any of the reported decisions of the old circuit court of this District.

At common law, as we are all well advised, the act of limitations of James I, did not apply either to judgments or specialties, and the defendant had no protection against unseasonable attempts to enforce a judgment or specialty other than the common law presumption of satisfaction after the lapse of twenty years, which presumption, however, was liable to be rebutted.

We are also familiar with the rule that at common law, after the expiration of a year and a day from the date of judgment, if no execution had been issued, none could issue, and the remedy was by an action of debt on the judgment. By virtue of 13 Edward I, chap. 45, a party had a right to revive a judgment by a *sci. fa.*, and have execution upon it. But if he issued the execution within a year and a day, the judgment was good for that time, and he might issue a new execution within the second year and a day, and so on *ad infinitum*, and in that way keep the judgment alive indefinitely, or he might issue his execution within a year and a day, have it returned *nulla bona*, and thereafter enter continuances on the docket from term to term, and take out execution anew. Then the practice came to be that an exe-

cution could issue at any indefinite time after the judgment, when one was originally issued within a year and a day and returned, and the continuances could be entered upon the roll of the court even after the issue of the writ. This condition of the common law obtained in the State of Maryland, and was derived from Maryland by us, qualified, however, by the act of assembly in question.

In the case of Mulliken *vs.* Duvall, 7 Gill & Johnson, 355, it was decided that where an execution had been issued and returned, and some time afterwards, after the expiration of twelve years from the date of the judgment, a *sci. fa.* was issued to revive the judgment, the *sci. fa.* could not be issued after the expiration of the twelve years; that it was barred by the act, and that the twelve years in that case must count from the date of the judgment, notwithstanding a writ had been issued and returned. The court departed from that, however, afterwards, as we shall see.

In the case of Hazelhurst *vs.* Morris, 28 Maryland, 74, it was held that:

"Where a party institutes a suit and the summons proves ineffectual to bring the defendant into court, and is returned by the sheriff, in order to keep the suit alive, the summons must be regularly renewed from term to term, until the defendant is taken. And the plaintiff cannot enter continuances on the record without renewing the writ from term to term, according to the practice of Maryland."

This decision applied merely to original process, not judicial process, and it is only pertinent to this case, so far as it treats of entering up continuances on the record.

A recent case on the subject is that of the Hagerstown Bank *vs.* Thomas *et al.*, 35 Maryland, 511, in which it is held, that by issuing a *fi. fa.* within three years from the date of judgment—the term of three years being substituted by a Maryland statute for the one year and a day at common law—and renewing from term to term, the writ never being actually delivered to the sheriff, but simply ordered *to lie*, in the first instance, and at each succeeding term, the judgment may be kept operative and alive for an indefinite time.

In the old Circuit Court, the earliest case was Johnson vs. Glover, 2 Cranch's C. C., 678. In that case, in April, 1823, an execution was issued and returned, and then an *alias fi. fa.* was returned to December, 1824. That was a case in which there was no question about the application of the act of 1715, since the *fi. fa.* was issued within two years of the date of judgment. .

In the same volume is found the case of Riggs & Gaither vs. Barrow. There the judgment was rendered 14th of January, 1820, and the following December a *fi. fa.* was issued and returned *nulla bona.* Then, October 23, 1823, a *fi. fa.* was issued and returned levied; that is to say, less than two years after the issue of the first *fi. fa.* and its return, another *fi. fa.* was issued and levied. There the court says that:

· "Where an execution has been issued within the year and a day, and shall have been returned by the marshal, it is not necessary to renew the execution from year to year, to keep alive the judgment, but the plaintiff may have a new execution at *any time* without a *sci. fa.* But where an execution is ordered to be made out and lie in the clerk's office, and shall not have been delivered to the marshal, and returned, the order for the renewal of the execution must be made within the year and day after the last order for renewal, or the judgment must be revived by *sci. fa.*"

The next case is that of Ott's Administrator *vs.* Thomas Murray, 3 Cranch C. C., 323. There a judgment was entered on the 9th of January, 1824; *fi. fa.* was issued, *to lie,* returnable at the April term, 1824. In September, 1826, another *fi. fa.* issued, and was returned *nulla bona.* In 1828, two years afterwards, another *fi. fa.* was issued, returnable to the May term of that year. The court there said: .

· "An execution taken out and ordered to lie in the office is sufficient to keep the judgment alive for one year; and if within the year and day thereafter another execution be taken out in like manner, to lie in the office, it will keep alive the judgment for another year; and so from year to year; and a *fi. fa.* taken out within the last year and a day

and put into the marshal's hands, may be executed, and if returned *nulla bona*, a new execution may *at any time thereafter* be taken out without *sci. fa.*, according to the opinion of the court in Riggs & Gaither *vs.* Barrow, at May term, 1826."

The last case was that of Digges *vs.* Eliason, 4 Cranch C. C., 619. There the judgment was rendered in June, 1820. In December, 1826, the judgment was revived by *sci. fa.* Then, on March 14, 1838, which was a little less than twelve years after the judgment was revived, there was a new *sci. fa.* issued, and the court held that *sci. fa.* issued within twelve years after the judgment on the former *sci. fa.*, though nearly eighteen years after the date of original judgment, was good; so that the plea of the statute of Maryland of 1715 was not sustained.

It will be observed, that in the two next preceding cases the court used the expression, "may at any time thereafter take out a writ." The court was citing the language of the old English books, especially Tidd's Practice. But, of course, the expression is to be restrained to the facts of each particular case. In all these cases the new writ was issued far within the period of limitations. It is not necessary, therefore, to hold this language to mean anything more than that the new writ may be issued at any time while the judgment is still in force and of undisputed validity. It certainly cannot be cited as authority for the position that, after the twelve years, the *fi. fa.* may *at any time* be taken out. In this last case, the court discussed the question whether the period of twelve years is to be computed from the date of judgment, or from some other date, and the conclusion arrived at is announced by Judge Cranch as follows:

" *Twelve years standing* means standing without any proceeding toward enforcing payment." 4 Cranch C. C., 622.

So that if a writ was issued and returned, or if it was renewed from year to year, the twelve years would count from the last act done towards enforcing payment of his judgment, the return in one case and the issue in the other, and would not count, therefore, from the date of judgment.

The present proceeding of *fi. fa.* took place more than twelve years after the date of the last return. It is said that the old circuit court of this District decided such a case in favor of the plaintiff, which is not reported (Tretler *vs.* Mayo), and is brought to our knowledge only through counsel engaged in the case, and from one judge of that court. We are not advised, however, what reasons governed the court in its decision, nor whether the same reasoning governed all the judges, nor how decided they were, and we do not think we ought to be hampered by their opinion, whatever respect we may have for it. It is a new question here, and in the condition of the authorities we have nothing to guide us except the language of the statute and its manifest object. The language is:

"No bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever, except, &c., shall be good and pleadable, or admitted in evidence, against any person or persons in this province after  *  *  *  the debt or thing in action is above twelve years standing."

The first section of the act, like the Statute of Limitations of James I, simply bars the prosecution of an action after the designated time; but this section 6, in relation to bonds, &c., says that they *shall not be good and pleadable or admitted in evidence.* Of course a bill, which means a single bill, or a bond, or any other specialty, which is neither good nor pleadable, nor admissible in evidence, is simply a nullity. The cause of action is entirely destroyed. Can it suggest itself to anybody that a discrimination was intended to be made between a specialty and a judgment which are both dealt with in the same section and the same language? It must be conceded that none is intended, so far as actions are concerned. It is admitted that after the expiration of twelve years—that is, after the judgment shall have been of twelve years standing—no action of debt on it can be brought by the plaintiff, nor any *sci. fa.* be issued upon it. The latter is decided in the case of Mulliken *vs.* Duvall, 7 Gill & Johnson, 355, before referred to. But the plaintiff says, although the judgment is not good and pleadable after the

expiration of this time, it may be good though not pleadable; that it may be good for the purpose of issuing execution upon it; that the act of limitation does not bar executions, but merely bars suits. There is an obvious error in this, at least to the extent to which the proposition is attempted to be maintained. It is admitted and decided that a *sci. fa.* cannot issue after the expiration of twelve years. The very object of *sci. fa.* is to issue execution, and therefore executions, in that form of proceeding, at least, are barred by the statute. Can it be supposed that the legislature, while intending to bar actions of debt and *sci. fa.* on the judgment, yet intentionally omitted the case of entering up continuances and issuing execution without any judicial proceeding?

We hardly think it was intended by the legislature, and we think the plaintiff is in error in supposing that he can get along with his judgment without ever having to plead it or give it in evidence. The defendant may put the plaintiff on the defensive, by an action for trespass, by injunction, by motion to quash. In such cases the judgment would have to be pleaded or offered in evidence. So that, for all practical purposes, if a judgment is not good and pleadable, it is not good for any purpose. Suppose a statute to provide that a mortgage should not be good and pleadable, or admitted in evidence, after the expiration of twenty years, and the defendant should undertake to sell under the mortgage, without invoking the aid of the court, would the court heed the suggestion, in answer to a bill for an injunction, that, although the mortgage was not good and pleadable, or to be admitted in evidence, yet it could be enforced by sale? We hardly think so.

Our conclusion, therefore, is, that the judgment of the defendant cannot be enforced by the issue of a *fi. fa.*, after twelve years have elapsed from the last proceeding taken to enforce the judgment, and that the court below was right, therefore, in sustaining the motion to quash the execution issued in this case.