GEORGE F. WARFIELD, USE OF JONATHAN MANRO, *vs.* JACOB BREWER, OF JOHN, AND GEORGE KEEFER, TERRE-TENANTS OF JAMES PRATHER.—*December* 1846.

In 1822, a judgment was rendered, which was revived in 1832. In 1842, a second *scire facias* was sued out, by the assignee of the judgment against the original defendant, and his tenants of the land of which he was seized in 1822. This writ was returned *nihil*, as to the original defendant; and made known to his terre-tenants, who appeared and pleaded limitations in bar of the writ, to which the plaintiff demurred. The *scire facias* set out the original judgment, and the subsequent proceedings thereon. HELD, that as the *scire facias* did not show at what period the original defendant aliened his land, whether immediately after the original judgment, in 1822, or not until a *fiat* was obtained against him, in 1832, the absence of this necessary averment was fatal to it upon demurrer, as respected the *terre-tenants*, not proceeded against until 1842.

If the design of a *scire facias* be, to make the land of the original defendant, in the hands of his alienees, liable for a judgment, it is the practice in this State to make both the original defendant and his terre-tenants parties to the writ, by which the judgment is to be revived.

If a *fieri facias* be issued now within three years after the rendition of a judgment, it may be levied as well on land conveyed by the defendant after the judgment, as on lands belonging to him at the time of levying the *fi. fa.*

But, when the plaintiff has suffered his judgment to die, and a *sci. fa.* is necessary to reanimate it, the law presumes it to be satisfied, and where the freehold is to be affected, the tenant thereof should be made a party to protect it.

Where a judgment is revived against executors only, the revived judgment does not bind the lands of the original defendant.

34    v.4

Upon a general demurrer, the court enquires, who committed the first error in pleading ?

APPEAL from *Washington* county court.

On the 16th November 1842, the appellant sued out a *scire facias* against the appellees, reciting a judgment obtained by a certain *Alexander Manro*, against *James Prather* and *Ellen Prather*, at November term 1822, for the sum of, &c.; and that a writ of *scire facias* was also sued out of *W.* county court, returnable to *March* term 1832, which was made known to *James Prather*, and *fiat* ordered at November term 1832, for, &c.; that *Ellen Prather* is since deceased; *that said judgments were entered for the use of George F. Warfield;* that *A. M.* is since dead, and no administration on his estate, and execution still remains to be made. The writ then commanded the sheriff to make to the said *James Prather*, and his terre-tenants, of all the lands, &c., in his bailiwick, whereof the said *J. P.*, on the 3rd Monday of November 1822, or ever afterwards, was seized, and that he, she, or they, be or appear, &c., to show cause, &c.

This writ was returned made known.

To *Jacob Brewer, of John*, terre-tenant of a portion of ground as described.

To *George Keefer*, terre-tenant of, &c.

Which were of the lands, &c., of *James Prather*, on the day of the rendition of the said judgment, at November term 1822.

The sheriff also certified, that "to my knowledge, there are not, nor is there any other terre-tenants of the aforesaid lots, or any other lands or tenements which were of the said *James Prather*, on the aforesaid day of the rendition of the said judgment, at the said November term 1822, or ever afterwards; and that the said *James Prather* hath not any thing in my bailiwick, whereby I could give him notice."

The said terre-tenants appeared to the writ, and the cause was continued until March term 1843, when the said *John Brewer, of J.*, prayed oyer of the *scire facias*, and pleaded, that the *original judgment* on which the said *scire facias* was impetrated, was of more than twelve years' standing. The other

terre-tenant also pleaded, the act of limitations in the same form.

The plaintiff in the *scire facias* demurred to those pleas, and the county court rendered judgment on the demurrer against him, when he prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By WEISEL and F. A. SCHLEY for the appellant, who contended :

1st. That the original lien was preserved by the *fiat* against *James Prather* of 1832, and that it was not necessary, during the lifetime of *James Prather*, (who is still living,) to make his alienees or terre-tenants parties, in order to preserve the lien created by the original judgment.

2nd. That a *fiat* against an original defendant, is a new judgment, but has all the attributes of the original upon which it is founded; and consequently, the *fiat* of 1832, carries with it the lien of the original judgment, and affects the land then in possession of the appellees.

3rd. That in a proceeding against the terre-tenants, founded on such new judgment, and to subject to execution the lands so bound, and in their possession, the statute of limitations runs from the date of such new judgment, and not of the original judgment.

By TIDBALL for the appellees, who controverted the points of the appellant's counsel.

MAGRUDER, J., delivered the opinion of this court.

To a *scire facias* issued against the original defendant, and the appellees, as his terre-tenants, the latter pleaded, that the original judgment had been above twelve years' standing. To this there was a demurrer, which the court below overruled, and the question here is, did the court err in overruling this demurrer?

The original judgment was unquestionably above twelve years' standing, at the time when this *sci. fa.* was issued. But

it appears by the *sci. fa.* itself, that in order to revive that judgment, a *sci. fa.* had been previously issued against the original defendant alone, and a *fiat* obtained. It also appears, that this *sci. fa.* was issued within twelve years after that *fiat.* Can this be relied on as an answer to defendant's plea?

It would seem, that in some of our sister States, when a judgment is to be revived in the lifetime of the defendant, it is not deemed necessary to make the terre-tenants parties. See *3rd Rawle,* 273. 11 *John.,* 513. In *Maryland,* however, the practice has been to make the terre-tenants, (if the design was to make their land answerable,) as well as the defendant himself, parties, when the judgment was to be revived. See 2 *Harris' Entries,* 749, 763. *2nd Evans' Harris,* 487, 488. From a practice so long established, and without any reason to believe, that a contrary practice ever existed in *Maryland,* it is rather hazardous to depart.

At one period, indeed, it was decided in this State, (and by a court of which one of the judges, at least, was in practice before the revolution,) that without first issuing a *scire facias,* and making the alienee a party to it, no *fi. fa.* could be levied on land which the defendant had aliened after judgment, although issued while that judgment was alive. See 1 *Har. & J.,* 471. 2 *Har. & J.,* 72. This, however, has been overruled, 2 *H. & J.,* 75, and in such a case it is the settled law, that if the *fi. fa.* be issued within the year and a day, (now three years,) after the rendition of the judgment, it may be levied as well on land conveyed by the defendant after the judgment, as on lands belonging to him at the time of levying the *fi. fa.* It is, however, quite a different case when the plaintiff, himself, has suffered his judgment to die, and a *sci. fa.* is necessary in order to reanimate it. The law presumes it, until revived, to be satisfied, and the purchaser has some right to presume it also, and may have purchased it under that belief. It is but justice to extend to him the benefit of the general rule, that "in all cases where the inheritance or freehold is affected, the tenant of the freehold is to be made a party." Unless this be allowed, then, although the terre-tenant purchases the land twenty years, or a longer period, after the judgment has lost

"its active energy," and is presumed to be satisfied, it will be in the power of the defendant, if he be yet alive, to make the land of his alienee answerable for the debt, by entering a *fiat*, although if he die, and no *sci. fa.* is issued upon the judgment, until the twelve years have expired, the terre-tenant may, by the plea of limitations, protect his freehold.

It is difficult, indeed, to account for some of our notions of the law upon this subject. In 1*st Brockenborough*, 170, *Chief Justice Marshall* says, "a judgment at common law did not bind lands, and there is no statute which, in direct terms, creates the lien. But courts have so construed the statute which gives the *elegit*, as to infer the lien from the power to take the lands in execution. The lien then grows out of the right to issue the *elegit*, and is inseparably connected with that right." But whence the right to issue a *fieri facias*, and under it sell lands, which the defendant had aliened *bona fide* before the writ was issued? We know, that the statute, 5 *George*, 2, *ch.* 7, did give the right to sell real estate "within any of the *British* plantations," but, "in like manner as personal estate in any of the said plantations, are seized, executed, sold or disposed of." But by what statute does the lien grow out of the right to issue the *fi. fa.?* How is it inseparably connected with that right?

We must, however, be bound by the decisions of our courts, and these decisions require us to say, that the lien still exists, and the real estate may be sold, notwithstanding an alienation after judgment. We know, however, of no decision by our courts, that when the judgment is to be revived, it is not necessary to make the terre-tenant a party, in order to proceed against his land, or that he is to be bound by any *sci. fa*, issued after the alienation, and to which he was not a party.

The case of *Mullikin and Duvall*, 7 *G. & J.*, decides nothing in favor of the appellant. The new judgment, in order to have "the attributes" of the original judgment, must be against the necessary parties. If the original be revived against the executors only, it certainly is not, as it originally was, a judgment to bind the lands.

It has all along been assumed, that the terre-tenants became so before the second *sci. fa.* was issued. In this case, however, it does not appear at what time the original defendant aliened this land. The alienation may have taken place immediately after the original judgment, or not until a *fiat* was obtained against the original defendant. Here is an omission which cannot now be supplied. Whose fault is this? Who is to suffer by it? It is apprehended, that this cannot prejudice the appellee. The plaintiff in error ought either to have guarded against this in his *scire facias,* or to have introduced the necessary matter into a replication to the plea.

If, however, the plea in this case was not the legal defence, which it is supposed to be, the question would be, who committed the first error in pleading? In the case of *Prather vs. Manro,* 11 *G. & J.,* the court said, the *scire facias* should contain upon its face such a statement of facts, as to justify the process in respect to the form in which it issues, and the persons who are made parties to it. The objections to be taken to this *sci. fa.,* is like those in that case. See also other objections to it, in 2 *Tidd's Practice,* 173, *Phila. Edit.,* 1828.

JUDGMENT AFFIRMED.