MOSES LAMBSON *vs.* JEREMIAH N. MOFFETT, RICHARD
F. MOFFETT and ENOCH I. MOFFETT.  SAME *vs.*
SAME.  SAME *vs.* RICHARD F. MOFFETT, JEREMIAH
N. MOFFETT and ENOCH I. MOFFETT.

*Practice—Execution—Scire Facias—Act of* 1874, *ch.* 320.

Notwithstanding a judgment creditor is entitled to have his execu-
tion at any time within twelve years after the date of the judg-
ment, or expiration or removal of a stay thereon, where there has
been no change of parties to such judgment by death·or marriage,
he may resort to a writ of *scire facias* within the twelve years, as
the safer and more effective mode of keeping his judgment alive.

APPEALS from the Circuit Court for Kent County.

The cases are stated in the opinion of the Court.

The causes were argued before ALVEY, C. J., STONE,
MILLER, IRVING, and BRYAN, J.

*H. W. Vickers,* and *John Prentiss Poe,* for the ap-
pellant.

*Richard Hynson,* and *Marion De Kalb Smith,* for the
appellees.

MILLER, J., delivered the opinion of the Court.

These appeals are from orders quashing writs of *scire
facias.*  It appears from the records that the appellant,
Lambson, on the 18th of October, 1869, recovered in the
Circuit Court for Kent County three judgments, two
against Jeremiah N. Moffett, and one against Richard F.
Moffett.  On the 3rd.of February, 1870, all of them were

superseded with stay of execution for six months, the two against Jeremiah N. by Richard F. and Enoch I. Moffett, and the one against Richard F. by Jeremiah N. and Enoch I. Moffett, so that these three parties all became defendants in, and bound by each of the supersedeas judgments. The further docket entries in the cases are somewhat confused, but we infer from them that writs of *fieri facias* were issued upon all of the judgments returnable to the October Term, 1870, to which the sheriff made return in effect that he had sold the property of Jeremiah N., but had on hand that of Richard F. and Enoch I.; and that at January Term, 1871, writs of *vendi. exponas* were issued against Richard F. and Enoch I. (and in one case against Jeremiah N. also,) the sheriff's return to which, in each case, was "still on hand and stayed by notice of defendants' application in bankruptcy." Nothing further appears to have been done in the cases until the 14th of April, 1882, *shortly before the lapse of twelve years* from the expiration of the stay of execution, when the plaintiff sued out writs of *scire facias* upon each of the judgments, notwithstanding there had been, in the meantime, no change of parties thereto. The defendants appeared to these writs and, at first, pleaded payment and limitations, but afterwards by leave of the Court withdrew these pleas and moved to quash the writs upon the ground that at the time of issuing them the plaintiff was entitled to writs of *fieri facias* on the judgments. The Court sustained this motion and quashed the writs; hence these appeals by the plaintiff in the judgments.

The question presented involves the construction of the *Act of* 1874, *ch.* 320, as to its effect upon writs of *scire facias,* and this requires a brief notice of antecedent legislation upon the same subject. But in this we need go no further back in our statutes than the Code adopted in 1860. By the laws then in force and codified in sections 16 and 17 of Article 29, it was provided (by section 16)

that an execution may issue on a judgment at any time within three years from its date, where there has been no change of parties thereto by death or marriage, and (by section 17) within three years after the expiration of a stay thereon, entered by the clerk on the docket at the time of the rendition of the judgment, and within the same time after removal of a stay caused by injunction, supersedeas, appeal, or writ of error. By the *Act of* 1862, *ch.* 262, both these sections were repealed and re-enacted, so that by section 16 it was provided that execution by *fieri facias* may issue at any time within *three* years after the date of the judgment, or expiration or removal of a stay thereon, and that execution by way of *attachment* may issue at any time within *twelve* years after the date of the judgment, but if more than three years have elapsed after its date or expiration or removal of the stay thereon, the *attachment* is made subject to the same defences by the defendant as in cases of *scire facias.* Some other changes were also made by this section, but they have no bearing upon the question now under consideration. By section 17, as thus amended and re-enacted, it was provided that if a stay be entered at the time of its rendition, or if the judgment be stayed by injunction, supersedeas, appeal, or writ of error, an execution may issue at any time within *three* years after the expiration or removal of such stay, but in no case whatever shall the period during which any stay law heretofore passed, or hereafter to be passed, may have been or may be in force, be computed as part of said *three* years. This Act was in force, and such was the state of the law in October, 1869, when the judgments in question were recovered. Afterwards the *Act of* 1874, *ch.* 320, was passed, by which section 16 of the *Code, Art.* 29, was repealed and re-enacted so as to read as follows:

"16. On all judgments rendered in any Court of law, an execution or attachment may issue at any time within *twelve* years from the date of such judgment, and if

there be a stay thereon, at any time within *twelve* years after the expiration or removal of such stay; when there has been no discharge " (*change* is obviously meant) "of parties to such judgment by death or by marriage."

While this Act manifestly repeals section 16 as amended by the Act of 1862, it does not, in terms, repeal section 17 as so amended, and it has been argued there is no repeal of this latter section by implication, and that it is still in force. But in the view we take of the subject, it becomes unnecessary to express any opinion upon this question, or upon the further one (which has also been argued) that the Act of 1874 is not retroactive and, therefore, has no effect upon judgments recovered before its passage.

This Act, like that of 1862 and the original sections of the Code, does not profess to deal directly with writs of *scire facias*, or the practice in reference thereto. It undoubtedly enlarges the period that had been fixed by antecedent laws, within which an execution may be issued on a judgment without reviving it by *scire facias*, but it does not, in terms, forbid the issuing of such writ, or declare it inoperative and void if issued within that period. The argument is that as the statute has made the writ no longer *necessary* (unless there has been a change of parties by death or marriage) for the period of twelve years, it has, therefore, *taken away the right* to issue it at any time within that period for any cause, or for any purpose whatever. Now the period of twelve years is also the statutory period of *limitations* as to judgments, (*Code, Art.* 57, *sec.* 3,) and the effect, therefore, of the construction contended for, would be to prevent the judgment creditor from reviving his judgment by *scire facias* in order to keep it alive, and avoid the Statute of Limitations, and compel him to resort, for that purpose, to the less effective and more hazardous mode of issuing an execution within the twelve years, and renewing it, if not effective, from term to term without break or intermission. Under a

*scire facias* he may obtain a new judgment, which, in its turn, will be good for twelve years, and in like manner be capable of being itself revived by the same process (2 *Poe's Pl. & Pr.*, sec. 594,) whereas by the other mode the least want of vigilance, or the slightest neglect on the part of the clerk to make the proper docket entries, may let in the plea of limitatious.   The former is, therefore, the simpler, safer, and more effective mode of keeping the judgment alive, and we discover nothing in the terms of the law, or the supposed reasons for its enactment, to make it imperative upon the Court to give it a construction which will have the effect of depriving judgment creditors of the right to resort to the remedy best adapted for their security and protection, a remedy which existed when the statute was passed and which it has not in express terms taken away.   It is said the object and policy of the Act is manifestly to prevent multiplicity of suits and executions, because they are expensive and oppressive ; and that it is a statute beneficial alike to plaintiffs and defendants, for to the former it avoids delay, and to the latter expense. This is no doubt true, but we are not to presume that creditors will resort to frequent revivals of their judgments for the mere purpose of wantonly harassing and oppressing their debtors, or that this was an existing mischief which it was the design of the statute to remedy.   If any such case of oppression should ever occur, speedy relief can be obtained from a Court of equity.   A judgment creditor can gain nothing by using any unnecessary process, and where he can enforce and secure the fruits of his judgment by an immediate execution, his interest will prompt him to avoid the delay of first reviving it by *scire facias*.   Presumably he will resort to such process only for some good reason or under some pressing necessity. In the present cases, as the records show, not only were the writs of *vendi. exponas* stayed by notice of the defendants' application in bankruptcy, but the twelve years

had almost elapsed at the time these writs were issued, and we are clearly of opinion there is nothing in this Act of 1874 which makes them void, or renders them liable to be quashed.

Such would be our judgment in the absence of authority bearing upon the subject, but such authority is not wanting. At common law a personal judgment was presumed to be satisfied within a year and a day from its rendition, and if the plaintiff suffered that time to expire without issuing execution, he could thereafter neither issue execution, nor sue out a *scire facias* to revive his judgment, and was driven to bring a fresh action in which he could offer his judgment in evidence as proof of the debt. Then came the Statute of *Westminster II,* (13 *Edward I, ch.* 45), which permitted and required a *scire facias* in all cases where the plaintiff desired to sue out an execution on his judgment after the expiration of a year and a day from its final recovery. 2 *Poe's Pl. & Pr.,* sec. 586. It was early held, however, that the remedy given by this statute was in addition to, and not in substitution for, the former remedy by an original action. " This Statute," says Lord COKE, " is in the affirmative, and therefore it restraineth not the common law ; but the party may waive the benefit of the *scire facias* given by this Act, and take his original action of debt by the common law. 2 *Inst.,* 472. Again in *Rolle's Abr.,* 900, there is the report of the case of *Roberts vs. Pesing,* tried in the King's Bench at Trinity Term, 13 *Charles I,* in which it was decided that if the plaintiff sue a *scire facias* within a year after the judgment, he cannot afterwards have a *capias ad satisfaciendum* within the year, till he hath a new judgment in the *scire facias.* This case is cited as good law in *Foster's Writ of Sci. Fa.,* 27, and in 2 *Tidd's Practice,* 1103, and it does not appear ever to have been overruled or questioned. If therefore authority be needed, this case is directly in point, and conclusive of the ques-

tion before us, for it decides that where a party unneces-sarily sues out a *scire facias* when he is entitled to, and can have an immediate execution, not that the writ *will not lie or is void*, but that the plaintiff thereby subjects himself to the inconvenience and delay of having the *capias* withheld until he obtains judgment of *fiat* under the writ to which he has thus without necessity resorted. Quite in accord also with the construction we now give to this Act of 1874 is that we gave to the Stay Laws in *Kirkland & Von Sachs vs. Krebs*, 34 *Md.*, 93. In that case it was decided that as the Stay Laws of 1861 and 1862 did not, in addition to the stay of execution and sale, expressly provide that *no action by scire facias* or otherwise should be brought upon judgments during the stay, they did not deprive the plaintiffs of the right to keep their judgment alive by *scire facias* issued during the stay, and having failed to do so, the lapse of more that twelve years from the time when execution could have issued, was an effectual bar to the judgment.

*Judgments reversed, and*
*new trials awarded.*

(Decided 29th February, 1884.)