SARAH E. WRIGHT, GARNISHEE, ETC., *vs.* SAMUEL P. RYLAND ET AL.

*Scire Facias to Revive Judgment—Alienees of Judgment Debtor Not Bound Unless Made Parties—No Execution on Original Judgment After Fiat on Scire Facias—Terre-Tenants.*

After a judgment of *fiat* in a *scire facias* proceeding to revive a judgment, the plaintiff cannot issue execution on the original judgment.

When a judgment is revived within the time during which execution could be issued on it, the alienees or terre-tenants of the land of the judgment debtor must be made parties to the *scire facias*, if they are to be bound by the new judgment.

While a judgment was in force against A he became entitled as distributee of an estate to an undivided third interest in a chattel real. He assigned this interest to his sister by a deed which was not recorded among the land records, but was lodged in the office of the register of wills where the estate was being administered, and A's interest was distributed and conveyed by the administrator to the assignee in pursuance of an order of the Orphans' Court. Subsequently, and before the expiration of the judgment against A the same was revived by a *fiat* on a *scire facias*, but the said assignee was not made a party to this proceeding. An attachment, reciting both the original judgment and the *fiat*, was issued and levied on the interest of the judgment debtor in said chattel real. *Held*,

1st. That although the original judgment was a lien on A's interest in said property, yet no execution could be issued thereon after the *fiat* which became the new and effective judgment in the case.

2nd. That the assignment and distribution as above mentioned of A's interest to his sister, the garnishee in this case, and her possession thereunder, constituted her an alienee and terre-tenant of the land.

3rd. That the lien of the original judgment was not revived against the alienee and terre-tenant by the *fiat*, because she was not made a party to the *scire facias*, and consequently she is not bound hy the new judgment.

Appeal from the Baltimore City Court (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Charles F. Harley* (with whom was *John Wheltle* on the brief), for the appellant:

The deed from the administrator to Sarah E. Wright complies in form with all the requirements of Code, Art. 21;.and, whatever may have been the merits or defects of the assignment from Coath personally to Mrs. Wright, the question of validity *vel non* of the order of the Orphans' Court authorizing the deed can not be raised in this case. Let us concede, however, *ex gratia argumenti*, that this question is a proper one in this case. The burden would be upon the appellee to show that the property attached at the time of laying the attachment was the property of Coath, whereas the proposition, if allowed, leads with irresistible logic to the conclusion that it was the property of the administrator. If this contention, made as it was by the plaintiff, is a proper one the garnishee should prevail in this case.

It is clear that if the plaintiff had not elected to renew its judgment by *scire facias*, the old judgment under the Act of 1890, chapter 114 (Supplement, Art. 26, sec. 20), would have been a lien upon this property at the time of laying the attachment on June 23rd, 1899, as the old judgment would not have expired till June 29th, 1899. Under the law the plaintiff had that remedy qualified by another remedy in the nature of a *scire facias*. Let us see what is the effect of the election of remedies. Attachment may issue at any time within twelve years from the date of judgment: "provided that at any time before the expiration of twelve years ＊ ＊ ＊ the plaintiff shall have right to have a writ of *scire facias* to renew or revive the same." It took advantage of this right; but the renewed judgment has no life as against this garnishee, because she was not made a party defendant therein, and the lands and tenements in controversy were not described in the sheriff's return in said *scire facias* proceedings. *Warfield* v. *Brewer*, 4 Gill, 266, 269; *Polk* v. *Pendleton*, 31 Md. 118; *Thomas* v. *Bank*, 46 Md. 43; *Bish case*, 59 Md. 382, 386; *Poe's Practice*, sec. 593; *Black on Judgments*, sec. 492; *Freeman on Judgments*, p. 767. So strict is this rule, that a prior lien creditor

can, under no circumstances, question the validity of his debtor's conveyance, when he fails to make such grantee a party defendant in the *scire facias* proceedings. *Armington* v. *Ran*, 100 Pa. St. 165; *Long* v. *McConnell*, 158 Pa. St. 578.

It is thus clear that, having failed to avail itself of the right to revive this judgment against Sarah E. Wright, the plaintiff cannot attach this property under the renewed judgment which the writ recites. Can an attachment be issued upon the old judgment within the twelve years after its renewal by *scire facias?* No case in point has as yet been presented by the able and diligent counsel for the appellee, in support of this proposition ; but the reasoning of a Pennsylvania authority seems to be favorable thereto. However, Pennsylvania authorities can have no bearing in this case, as the proceedings in *scire facias* in that State are peculiar statutory proceedings *sui generis*, being entirely different from the practice thereunder in all the other States and in England. Even the judgment therein is different, being *quod recuperet*, instead of *fiat executio*. *21 A. & E. Ency. of Law 870*; *Freeman on Judgments*, sec. 442; *Black on Judgments*, sec. 499; *Freeman on Executions* (4 ed.) sec. 81. The Pennsylvania proceeding in *scire facias* is very similar to the old action on judgment. *Freeman on Executions*, sec. 81. Where a *fieri facias* issued out after a *scire facias* on a judgment, the *fieri facias* must be grounded on the *scire facias*, even though the *scire facias was sued out unnecessarily*. *Hall* v. *Claggett*, 63 Md. 61; see also *Freeman on Executions*, sec. 94; *Richardson* v. *McDougall*, 19 Wend. 80.

"Again in *Rolle's Abr.*, 900, there is a report of the case of *Roberts* v. *Pesing* tried in the King's Bench at Trinity Term, 13 Charles I, in which it was decided that if the plaintiff sue a *scire facias* within a year after the judgment he cannot afterwards have a *capias ad satisfaciendum* within the year till he hath a new judgment in the *scire facias*. This case is cited as good law in Foster's Writ of *scire facias* 27 and *Tidd's Practice*, 1103, and it does not appear ever to have been overruled or questioned." *Lambson* v. *Moffett*, 61 Md. 431. "Where a *fieri facias* is issued out after a *scire facias* on a judgment the

*fieri facias* must set out the award of execution on the *scire facias* as well as the original judgment, even as it seems though the *scire facias* was sued out unnecessarily." 2 *Tidd's Practice*, 998. Where an execution is sued out after a *scire facias* on a judgment, the execution must be grounded on the judgment in *scire facias*, though the *scire facias* was sued out unnecessarily. *Davis* v. *Norton*, 1 Bingham 133. " The original judgment was waived or suspended by the plaintiff, on his causing the writ of *scire facias* to be sued out to revive it." *Ibid.*, 7 Moore, 502. It has never been reanimated as to this garnishee. " The judgment of *scire facias* seems also to merge the original judgment, so that if a second *scire facias* is desired, it can only be obtained on the first *scire facias*, and not on the original judgment." *Freeman, Judgment*, sec. 447.

It is, therefore, clear that the attachment should recite the judgment on *scire facias* as well as the original judgment. See *Harris' Entries*, 690, as to form. " The able and thorough discussion of this question by Judge Bakewell in *Walsh* v. *Bosse*, 16 Mo. App. 231, in which it is held that the proceeding by *scire facias* to renew a judgment, while a continuation of the original proceeding, so far partakes of the nature of an action that, in effect, the judgment therein is a new judgment, designed to avoid the Statute of Limitations, which then runs from its date and not from that of the original judgment, is, in my humble opinion, conclusive in its reasoning and cited authorities." *Wonderly* v. *Lafayette County*, 74 F. R. 706.

The plaintiff is entitled to *scire facias* one day or one year after his original judgment is rendered or at any time within twelve years. The only penalty is, that, if he sue out a *scire facias*, he must rely on his new judgment therein for his execution. *Freeman on Executions*, sec. 88; *Roberts* v. *Pesing, Rolle's Abr.* 900; *Lambson* v. *Moffett*, 61 Md. 426, 431; *Wonderly* v. *Lafayette Co.*, 74 F. R. 702.

As far as the terre-tenant is concerned, the *scire facias* is a *new proceeding*, although as to the defendant it is but a continuation of an old action. But whatever may be the nature of the *proceeding* or *action*, the *judgment* of *fiat executio* in the

proceedings *scire facias executionem non* is a *new judgment*, certainly a *renewed* judgment as the statute says.   *Weaver* v. *Boggs*, 38 Md. 264; *Mullikin* v. *Duvall*, 7 G. & J. 360; *War-field* v. *Brewer*, 4 Gill 269; *Bish case*, 59 Md. 382; *Lambson* v. *Moffett*, 61 Md. 431; *Coke's Littleton*, sec. 505; *Poe's Practice*, sec. 585 and authorities quoted.   *Walsh* v. *Bosse*, 16 Mo. App. 231; *Lafayette Co.* v. *Wonderly*, 34 C. C. A. 362, affirm-ing 74 Fed. Rep. 702.

The record shows that the attachment was issued upon the *renewed* judgment ; the authorities show that it was necessary to issue on the renewed judgment and to recite the original judgment.   It furnished a new *terminus a quo*.   *Walsh* v. *Bosse, supra*.   It is good for twelve years from its rendition— not twelve years from the date of the expiration of the orig-inal judgment.   *Poe's Practice*, sec. 594.   The execution is grounded upon the judgment in *scire facias;* and as the plain-tiff has no rights thereunder against this garnishee, it is re-spectfully submitted that the Court below erred in granting the plaintiff's prayer and in refusing the garnishee's prayers and in overruling the garnishee's motion to quash.

The motion to quash was filed out of abundance of caution, and presents in a different form the questions raised by the prayers ; and it could properly be filed at any stage of the cause.   *Poe's Practice*, sec. 539; *Bruce* v. *Cook*, 6 G. & J. 346; *Stone* v. *Magruder*, 10 G. & J. 387; *Eveson* v. *Selby*, 32 Md. 340; *Hodge & McLane on Attachment*, sec. 94.   Can it be contended that the old judgment had five days to live as far as the terre-tenant was concerned, and that as to the defendant it was dead, and had been reanimated, renewed and revived in the judgment of *fiat*?   After judgment of *fiat*, could the plaintiff have issued under old judgment against defendant?   The plaintiff cannot play "hot and cold" at the same time.   It had its rem-edy.   It made its election; and under the law it must stand by it.

*Alexander Hardcastle, Jr.*, and *Frank D. Wynn* for the ap-pellee :

The judgment lien was effective at the time of the issuing of

the writ of attachment because, 1. The appellant is not a terre-tenant.    2. That the lien of the original judgment is not extinguished by the judgment of *fiat*, but remains in force for the statutory period of twelve years.

1. The appellant is not a terre-tenant because she holds no title under William Coath, the judgment debtor.    He, as administrator, acted as trustee for the distributees who were next of kin, one of whom was himself.    Next of kin can obtain title only through the administrator.    *Neale* v. *Hagthop*, 3 Bland, 551; *Smith* v. *Dennis*, 33 Md. 449 450; *Rock Hill College* v. *Jones*, 47 Md. 19; *Matthews* v. *Turner & Woodyard*, 64 Md. 121.

The administrator's deed of April 23rd, 1895, purported to convey to the appellant two undivided third interests in the aforesaid leasehold estate.    It did convey the appellant's undivided one-third *interest*, but it did not convey the undivided one-third interest of William Coath, because his interest could not pass from the administrator to a third party, but must first pass to the distributee.    *Public General Laws*, Art. 93, sec. 139.    The assignment to the appellant from William Coath is invalid for the reason that, it was filed in the office of the *Register of Wills of Baltimore City*, whereas, it should have been recorded in the Superior Court of Baltimore City.    *Public General Laws*, Art. 21, secs. 1 and 13; *Constitution*, Art. 4, sec. 38.    *The United States Insurance Company* v. *Shriver et al.*, 3 Md. Ch. 290.

The appellant holds no title under the judgment debtor, therefore, she is not a terre-tenant.    It is conclusively established that terre-tenants are only those "Who are in possession, deriving title under the judgment debtor."    *Polk* v. *Pendleton*, 31 Md. 123; *Lee* v. *Early*, 44 Md. 94; *Freeman on Judgments*, sec. 443, 767–768. A mere occupier is, however, not a terre-tenant, 16 *S. & R.* (Pa.) 455; 16 *Amer. Dec.* 587.    It is clear the judgment debtor resorted to a skillful advice, and attempted to avoid the requirement of the registration laws.    It is equally clear that to this day there is no duly recorded conveyance, divesting William Coath of the interest in land, which vested in him at the death of his mother.

2. The lien of the original judgment is not extinguished by the judgment of *fiat*, but remains in force for the statutory period of twelve years. The language of the statutes is absolute and unqualified in continuing the lien of the judgment for a period of twelve years. And it is, to say the least, incumbent upon the appellant to show some established principle of law, sufficient to deprive the judgment creditor of the lien thus expressly given. The appellee cannot be deprived by mere implication of a right positively conferred upon it. *Code*, Art. 26, sec. 19, 20, Acts of 1890, chaps. 114, 314.

In *Doub* v. *Barnes et al*, 4 Gill, 9, the Court explained and confirmed the decision in *Murphy* v. *Cord*, 12 G. & J. 182, and held : *a*, That the lien of the judgment was not lost with the right to issue an immediate execution   *   *   * and the lien remained for twelve years ; *b*, that when the debtor alienated lands subject to the lien of a judgment, before the right to issue an immediate execution was suspended, that is, within three years within the date of the judgment, a *scire facias* was unnecessary to affect the terre-tenants." See *Warfield* v. *Brewer*, 4 Gill, 205.

The period is now twelve years within which execution or attachment may issue, and it is not necessary to notify terre-tenants within that time. The office of a *scire facias* to revive a judgment is to reinvest it with all the powers, attributes and conditions that originally belonged to it, and which have been wholly or in part suspended by lapse of time, change of parties and the like. *Moore* v. *Garrettson*, 6 Md. 448. The doctrine stated above was affirmed, and the language quoted, in *Huston et al.* v. *Ditto et al.*, 20 Md. 328, also in *Hoffman* v. *Shuff*, 80 Md. 614 ; 2 *Poe on Pleading and Practice*, sec. 609. The *scire facias* and judgment of *fiat* are in effect nothing more than a compulsory acknowledgment by the judgment debtor of an existing obligation, which by force of such acknowledgment is kept alive for another period of twelve years.

There is no authority, statutory or judicial, in Maryland that supports the appellant's contention, but there is strong,

direct authority that a judgment is a lien upon property, aliened after judgment, for twelve years; and we find the doctrine conclusively established outside of the State. *Black on Judgments*, sec. 492; *Freeman on Executions*, sec. 92A; 2 *Bouvier's Law Dictionary*, 960.

"It is a common, plain and familiar principle that a *scire acias* to revive a judgment *post annum et diem*, is but a continuation of the original action, and the execution thereon is an execution on the former judgment. The judgment on the *scire facias* is not, as the Court erroneously supposes, a new judgment giving vitality only from that time, but it is the revival of the original judgment, giving, or rather continuing, the vitality of the original judgment with all its incidents from the time of its rendition." *Irwin* v. *Nixon's Heirs*, 11 Pa. Stat. 425.

"The judgment, on a *scire facias*, issued to revive the lien of a former judgment, is for some purposes in the nature of a new judgment * * * But it is not considered as operating to merge and extinguish the original judgment, to all intents and purposes, so as to take away the rights of the plaintiff. The original judgment still has its operation and efficacy." *Fursht* v. *Overdeer*, 3 Watts & Sergeant, 471; and *Little* v. *Smyser*. 10 Pa. St., 385, 386.

SCHMUCKER, J., delivered the opinion of the Court:

Ryland & Brooks obtained judgment in the Baltimore City Court against Geo. W. Grafflin and William Coath for $457.16, on June 29th, 1887. The judgment was entered to the use of the Ryland & Brooks Lumber Company which caused a *scire facias* to be issued thereon, in which a judgment of *fiat* was entered on May 8th, 1899. The only defendants to the *scire facias* were the original judgment debtors, no notice having been taken of their grantees or alienees.

In August, 1892, Maria Coath, the mother of the defendant, William Coath, died intestate, being the owner of a sub-ground rent of $180 *per annum* issuing out of a lot of ground in Baltimore City. She left three children including William, each of

whom was entitled to an undivided one-third of her estate. He assigned his interest in the estate shortly before the distribution thereof to his sister Sarah E. Wright by a deed duly executed and acknowledged, which was lodged in the office of the Register of Wills of Baltimore City, but was not recorded in the land records. The assignment recited a consideration of $1,000. and its *bona fides* is not assailed in the record. By the final administration account of the estate two-thirds of the net residue, including the sub-rent of $180 was distributed to Sarah E. Wright, and a conveyance thereof was made to her by the administrator under the order of the Orphans' Court and she entered into possession of it. That conveyance was duly recorded in the land records, on August 16th, 1894, nearly four years before the issuing of the *scire facias* on the judgment against Grafflin & Coath.

On June 23rd, 1899, The Ryland & Brooks Lumber Company, after the judgment of *fiat* had beed entered, issued an attachment reciting both the original judgment and the *fiat*. On the next day, June 24th, the attachment was levied as per schedule upon the interest of William Coath in the sub-rent of $180., and on July 8th, 1899, it was laid in the hands of Sarah E. Wright.

She appeared to the attachment and pleaded property in herself to the interest in the sub-rent which had been levied on, and also moved to quash the attachment on the same ground and for the further reason that she had not been made a party to the *scire facias* by which the judgment had been revived before the attachment was issued. The motion to quash and the issue on the attachment were tried at the same time before the Court without a jury, and the Court overruled the motion to quash and rendered a verdict and entered judgment for the plaintiff for the property attached and the garnishee appealed.

At the trial of the case the Court granted the prayer of the plaintiff which briefly recited the facts already stated in this opinion and asserted the plaintiff's right to a verdict thereon, and it rejected the three prayers of the garnishee which as-

serted that there was no evidence legally sufficient to entitle the plaintiff to a verdict, or to entitle it to a condemnation of the property levied on, or to show that the defendant had any interest therein either when the judgment was rendered, or when the attachment was issued, or at any time since. There are two bills of exceptions one on the Courts action on the prayers and the other to the refusal of the motion to quash.

The original judgment against Grafflin & Coath was a lien on Coath's one-third interest in the ground rent of which his mother died intestate. That lien was not divested by the sale and conveyance of his share of the estate to his sister and the plaintiff might have seized it under a *fi. fa.* on the original judgment at any time before the issue of the *scire facias.* But after the judgment of *fiat* in the *scire facias* he could not have execution upon his original judgment.

This Court has repeatedly held that the *fiat* "is considered a *new judgment;*" *Mulliken* v. *Duvall,* 7 G. & J. 355; *Weaver* v. *Boggs,* 38 Md. 264; and that it is "the *effective judgment*" and must be "accurately recited in the process of execution" *Hall* v. *Clagett,* 63 Md. 61. In *Lambson* v. *Moffett,* 61 Md. 431, this Court cites with approval *Roberts* v. *Pesing,* Rolle's Abridgement, 900, where it was held that the plaintiff who sued out a *scire facias* within a year and a day after judgment, could not have execution until he had a new judgment in the *scire facias,* and say that it is authority, if any were needed, for the proposition that where a party unnecessarily sues out a *scire facias* when he is entitled to and can have an immediate execution, he thereby subjects himself to the inconvenience and delay of having the execution withheld until he obtains a judgment of *fiat* under the *sci. fa.*

The remaining question to be determined is whether the lien of the original judgment upon the sub-rent was revived by the *scire facias* to which Mrs. Wright, the vendee of Coath's interest therein, was not made a party as terre-tenant. The question who are necessary defendants to a *scire facias* has been frequently before this Court.

In *Arnott* v. *Nicholls,* 1 H. & J. 472, which was decided at

a time when the law required a judgment to be revived by a *scire facias* after a year and a day from its date before a *fi. fa.* could issue upon it, the Court held that if a defendant sells and conveys his lands *bona fide* for a valuable consideration after the judgment, even within the year and day, no execution can issue against the lands of the vendee until a *scire facias* has been sued out on the judgment and notice given to him as terre-tenant. That case has been erroneously referred to as having been overruled by *M'Elderry* v. *Smith*, 2 H. & J. 72, but an inspection of the latter case shows that it did not overrule the former one at all, but simply decided that where the defendant aliened his land *during the pendency of* a *scire facias* the plaintiff, after a *fiat* on the *scire facias*, might issue a *fi. fa.* and levy it on the land so aliened, without proceeding against the parties who become vendees *pendente lite*.

In *Murphy v. Cord*, 12 G. & J. 182, a *fi. fa.* levied upon lands which had been mortgaged by the defendant within a year and day after the judgment was upheld in an ejectment brought by the mortgagee against the purchaser of the land under the *fi. fa.*, but no opinion was filed in the case and it does not appear upon what grounds or authority the Court relied in making the decision. In *Warfield* v. *Brewer*, 4 Gill, 268, the Court expressed the opinion that a *fi. fa.* issued within a year and day after the entry of the judgment might be levied on lands conveyed by the defendant after the judgment without first issuing a *scire facias* against the vendee, but the Court relied, in so holding, upon the erroneous assumption that *Arnott* v. *Nicholls, supra,* had been overruled by *M'Elderry* v. *Smith, supra.* It appears, however, from the record in *Warfield* v. *Brewer*, that the expression by the Court of the opinion just mentioned was merely an *obiter dictum*, as it did not appear in that case whether the alienation of the lands of the defendant had been made before or after the *sci. fa.* was issued and for that reason, among others, the judgment in favor of the terre-tenant was affirmed.

It has been uniformly held that when the *scire facias* was not issued until after the year and day, which period was extended

by Act of 1823, ch. 194, to three years, during which execution might issue without resort to *scire facias*, it was necessary to make the alienees after judgment parties to the writ if it was desired to affect the lands conveyed to them. In *Warfield* v. *Brewer, supra*, the Court says : " We know, however, of no decision of our Courts that when the judgment is to be revived it is not necessary to make the terre-tenant a party in order to proceed against his land or that he is to be bound by any *scire facias* issued after the alienation, to which he was not a party." In *Polk* v. *Pendleton*, 31 Md. 123, the Court in speaking of the necessity of including the terre-tenants in the *scire facias* say : " They are in, as of the estate of the judgment debtor, and before the judgment can be revived and enforced by execution against the land so as to divest their title, it is necessary to warn them by the *scire facias*, so that they may have an opportunity of making their defense and of claiming contribution from others holding lands of the judgment debtor, bound by the judgment." See to same effect *Walsh* v. *Boyle*, 30 M d. 270.

Since the Act of 1884, ch. 178, authorized an execution to be issued upon a judgment at any time within twelve years from its date, this Court has not passed upon the necessity of making the terre-tenants parties to a *scire facias* issued within that time, but both the practice hitherto pursued in issuing the writ and the principles of pleading seem to require that they should be made parties. So far as they are concerned the proceeding is a new one and it may result in giving vitality for a long time to a burden on their lands which is about to expire. *Scire facias* although a judicial process " so far partakes of the *nature of an action* that the defendant may appear and plead to it in the same manner as to an action founded upon an original writ and the judgment thereon is a *new judgment*." *Weaver* v. *Boggs*, 38 Md. 264. It has been held in several cases that the writ is in the nature of a declaration and that it must " contain upon its face such a statement of facts as to justify the process in respect to the form in which it issues and the persons who are made parties to it." *Prather* v. *Manro*,

11 G. & J. 265; *McKnew* v. *Duvall*, 45 Md. 509. In view of the decisions to which we have referred it would be inconsistent to hold that the owner of the land thus put in jeopardy should have no notice of the proceeding which he is entitled to defend and which if undefended might prove destructive of his title to his lands.

The law in its present *status* is very liberal toward the plaintiff who may issue execution on his judgment, at any time during the twelve years for which it is a lien, and levy upon the lands of the terre-tenant without previous notice to that person. It imposes no hardship upon him to require that, when he seeks to revive and extend the lien of the judgment for another twelve years, the parties owning the land to be affected by the revived lien should have notice and an opportunity to be heard in their own behalf before the *fiat* goes against them.

. We think that the appellant, Sarah E. Wright, was entitled to notice of the *scire facias* as terre-tennant and should have been made a defendant to it. The assignment to her of the equitable interest of her brother in their mother's estate, followed as it was by the distribution of it to her in the administration account and the subsequent conveyance of the legal title to her by the administrator in pursuance of the order of the Orphans' Court, and her entry into possession thereunder constituted her an alienee and terre-tenant of his interest in the rent. The omission to make her a party to the *scire facias* resulted in a failure to revive the lien of the judgment against the interest which she derived from her brother in the ground rent. The second and third prayers of the appellant presented this issue and they should have been granted by the Court below.

*Judgment reversed with costs.*

(Decided February 8th, 1901.)

Jones, J., dissented and delivered the following opinion :

For the reasons which are given in the following expression of my views I have felt constrained to dissent, though with

great respect, from the conclusions of the Court in this case. Though the facts of the case appear in the opinion of the Court it will conduce perhaps to a better understanding of the views I shall here submit, to accompany them with a par-- ticular statement of the facts.

On the 29th of June, 1887, Samuel P. Ryland and Chauncy Brooks, partners, obtained in the Baltimore City Court a judgment for $457.16, with interest and costs against George W. Grafflin, Jr., and William Coath, partners, trading as Grafflin & Co., which was on the 28th of April, 1899, entered to use of the Ryland & Brooks Lumber Company, a body corporate. On the 28th of April, 1899, a writ of *scire facias* to revive this judgment was issued and was returned as "made known to George W. Grafflin and William Coath, co- partners, trading as Grafflin & Co., by service" on each of the partners in the regular form. On the 8th of May, 1899, judgment of *fiat* was entered in the *scire facias* proceeding. On the 23rd of June following the plaintiffs sued out an attachment upon which there was the following return: "Entry made and attached and appraised as per schedule on the 24th day of June, 1899. Notice of this attachment given to Charles F. Evans and John B. Spence, trading as Evans and Spence, occupants in possession of the property attached, described in schedule. Also notice of this attach- ment given to Sarah E. Wright and Ella C. Dunlap, on the 8th day of July, 1899. Also laid in the hands of Sarah E. Wright on the 8th day of July, 1899, at 1.50 o'clock P. M., in presence of Bernard Schminke, and garnishee summoned." The property embraced in the schedule accompanying the return was all the right, title, interest, estate, &c., of William Coath in and to a lot of ground with the improvements thereon, and particularly the annual sub-rent issuing thereout of $180, which was described as situated on Lombard street, in the City of Baltimore, and as "being the same property sub- leased by Maria Coath to Moses Moses by sub-lease bearing date the thirty-first day of January, 1868," &c.

Sarah E. Wright, who was returned as garnishee, appeared

to the attachment and pleaded : 1st, that the land and tene-
ments mentioned in the schedule annexed to the sheriff's
return at the time of entering up the judgment upon which
the attachment was issued, and at the time of laying the said
attachment were and always since have been and still are, her
property ; 2nd, that they did not at any of the times men-
tioned belong to the defendants, nor to either of them ; and,
3rd, the defendants did not at any of said times nor did either
of them have any right, title or interest in or to said lands
and tenements.    The plaintiffs traversed the pleas and upon
issues joined the case was submitted to the Court for trial.

Upon the trial the evidence showed that one Maria Coath,
in the month of August, 1892, died intestate, possessed of
the annual sub-ground rent of $180 issuing out of the lot of
ground described in the schedule returned by the sheriff with
the writ of attachment sued out in this case; that William
Coath, one of the defendants in this case, Sarah E. Wright,
the garnishee, and one Ella C. Dunlap were the next of kin
of the said deceased, and entitled, as distributees, to her
estate ; that on the 30th day of January, 1894, William Coath
executed, in consideration of one thousand dollars, to Sarah
E. Wright an assignment of all his "right, title interest and
distributive share in and to all the personal estate of " his
mother, Maria Coath, which assignment was acknowledged
before a justice of the peace and recorded in the office of the
Register of Wills of Baltimore City ; that William Coath, as
administrator of the estate of Maria Coath, in making distri-
bution thereof, distributed to "Sarah E. Wright, a daughter of
the intestate and assignee of the distributive share" of him-
self, "a son of said deceased, under deed dated January 30th,
1894, left to be recorded in the office of the register of
wills, two undivided one-third interests in the annual sub-rent
of $180," &c., and to Ella C. Dunlap "one undivided one-third
interest" in the said sub-rent ; and that thereafter, in pursuance
of an order of the Orphans' Court the said administrator
executed on the 23rd day of April, 1894, to the said Sarah
E. Wright and the said Ella Dunlap a deed of the said

annual sub-rent, giving to the former two, and to the latter one, undivided interest in the same. This deed was duly recorded among the land records of Baltimore City, and by virtue of this deed and of the before-mentioned assignment the said Sarah E. Wright and Ella Dunlap entered into possession of their respective interests in and to said sub-rent.

Upon this evidence under the pleadings the plaintiffs offered a prayer which the Court granted; and the garnishee offered three prayers to the effect that there was no evidence legally sufficient to sustain a verdict for the plaintiff; or to entitle plaintiff to a judgment of condemnation of the lands and tenements mentioned, &c.; or to show that the defendants or either had any right, title or interest in or to said lands and tenements at the time of entering up the judgment upon which the attachment was issued or at the laying of the attachment or at any time since. These prayers the Court rejected. The action of the Court upon the prayers is the subject of the first exception contained in the record. The garnishee then made a motion to quash the attachment upon the grounds set up as a defense in her pleas and upon the additional ground that the original judgment upon which the attachment was issued, was extended June 29th, 1887, and *scire facias* proceedings to renew the same were instituted by plaintiffs on April 28th, 1889, and judgment of *fiat* was entered thereon on May 8th, 1889; and that the defendant, William Coath, had prior to these proceedings in *scire facias*, by a good and valid deed "assigned, conveyed and granted to the garnishee the lands and tenements mentioned in the schedule annexed to the sheriff's return, and at the time of the institution of said proceedings in *scire facias* the garnishee was an alienee or terre-tenant of said lands and tenements deriving title from said Coath; and that said garnishee was not made a party defendant in said *scire facias* proceedings, and was not served with the writ of *scire facias*; nor were the lands and tenements mentioned in said schedule annexed to the sheriff's return in this attachment case, described in the sheriff's return in said *scire facias* proceedings; and the defendant, Grafflin, has not now, and never

at any time had· any right, title, interest or estate in and to said lands and tenements." The motion to quash was submitted by counsel to the Court upon the evidence that had already been given in the case and was overruled by the Court. This action of the Court was made ground for the second exception by the garnishee as disclosed by the record. After the overruling of the motion to quash a verdict was entered by the Court for the plaintiff followed by "judgment of condemnation of the property attached as per schedule" from which the appeal here was taken.

. The attachment issued in this case recited the original judgment against the defendants therein, and also the *scire facias* proceedings and the judgment of *fiat* thereon, which was. proper (*Hall* v. *Clagett et al.*, 63 Md. 57), and showed upon its face that the garnishee had not been brought in under the. *scire facias* and made a party to that proceeding. The real question in the case, though there is some confusion in the record in presenting it, is whether this omission to so bring in the garnishee under the *scire facias* proceedings as terre-tenant is fatal to the attachment as levied against the property described in the sheriff's schedule, which is now possessed by the garnishee under the circumstances detailed in the proof. At the death of his mother, Maria Coath, in 1892, William Coath became entitled to an equitable interest in the property levied upon under the attachment in this case, to the extent of one undivided third part thereof as one of her distributees ;· and this interest immediately became subject to the lien of the original judgment rendered against him and his partner on. June 29th, 1887; 2 Code, Art. 83, sec. 1; 1 Code, Art. 26 sec. 19; and subject to the payment of the debts of the deceased, and to abide the due administration of her estate, was liable to immediate execution thereunder as the law then stood. Formerly execution could not have been had, where the judgment had been standing for a year and a day, unless the same was first revived by *scire facias* proceedings. This was first changed by Act of 1823, ch. 194, which extended the time. within which execution might issue, without a resort to *scire*

*facias* to revive the judgment to be executed, to three years. When the judgment here in question was rendered the Act of 1884, ch. 178, which had repealed and enlarged the provisions of the Act of 1874, ch. 320, had provided that an execution might issue at any time within twelve years from the date of a judgment.　This Act has been followed by Acts of 1888, ch. 421, and 1890, chap. 114, which are practically identical with it as respects the question which has been stated as the one involved in this case.

Under the law as it stood prior to the Act of 1823, it was at one time held by the General Court that no execution could be levied on land which the judgment debtor had aliened, after judgment, *bona fide* and for a valuable consideration, although when so aliened a year and a day had not expired and the judgment was still alive, unless a *scire facias* had been sued out and *fiat* had against the alienee. *Arnott, &c., v. Nicholls,* 1 Har. & John. 471.　But this case was subsequently overruled in the case of *McEldery* v. *Smith,* 2 Har. & John. 72, as interpreted in the case of *Warfield* v. *Brewer,* 4 Gill, 265, where it is said that the law was then settled " that if the *fieri facias* be issued within a year and a day (now three years), after the rendition of the judgment it may be levied as well on land conveyed by the defendant after the judgment as on lands belonging to him at the time of levying the *fieri facias.*"　In the case of *McEldery* v. *Smith,* the alienation was made pending *scire facias* proceedings to revive the judgment, and execution was levied by the plaintiffs upon the land aliened, under the judgment of *fiat* upon said proceedings without having proceeded by *scire facias* against the alienees.　This the General Court held to be irregular, but this decision was reversed by the Court of Appeals.　In the subsequent case of *Murphy* v. *Cord,* 12 Gill & John. 182, a judgment was obtained against a certain John Dallam, who, within a year and a day after the rendition of the judgment (on the 6th of February, 1822), executed a mortgage of the lands which were subject to the lien of the judgment.　The plaintiffs in the judgment not having issued execution on the same within a year and a day instituted a

*scire facias* proceeding and obtained a *fiat* thereon, but did not make the mortgagee a party to this proceeding. On this judgment of *fiat* execution was issued under which the mortgaged premises were levied upon and sold, and it was held by the County Court and affirmed on appeal that the mortgagee could not maintain ejectment against the purchaser. In affirmance of rulings in this case see *Doub* v. *Barnes*, 4 Gill, 1 (page 11).

The facts in reference to which these several rulings were made show them to have been that where a judgment debtor aliened lands, subject to the lien of the judgment, while the judgment was still alive a *fieri facias* issued upon the judgment, subsequent to such alienation, and before it became dormant could be levied upon such lands without first suing out a *scire facias* against the alienee. And that where a *scire facias* had been sued out against the original defendant in a judgment, while the judgment was yet alive, to have it revived, and pending the proceeding on the *scire facias*, but after the time had elapsed when, in the absence of proceedings to revive, the judgment would have become dormant, lands subject to the lien were aliened, a *fieri facias* under the judgment of *fiat* could be levied upon such lands without first proceeding by *scire facias* against the alienee. Lastly, that where lands subject to a judgment were aliened when the judgment was still alive if subsequently it was revived by *scire facias* against the original defendant to which the alienee was not a party, execution could be had against the lands so aliened under the judgment of *fiat*. The effect of these rulings was to require that, in the conditions named, all parties should, at their peril, take notice of the rights of the judgment creditor. This was entirely consistent with the reason given for requiring *scire facias* to revive judgments remaining unexecuted, first, for a year and a day and then (under the Act of 1823) for three years, before execution could be had of them. This reason was that after such lapse of time the judgment was presumed to be satisfied or released. *Foster's Writ of Sci. Fa.*, 3 (marg.), 3 Bac. Abridg. 724; *Johnson* v. *Lemmon*, 37 Md. 336–343. In

*Warfield* v. *Brewer*, *supra*, the Court said : ''When the plaintiff himself has suffered his judgment to die and a *sci. fa.* is necessary to reanimate it, the law presumes it, until revived, to be satisfied, and the purchaser has some right to presume it also, and may have purchased it (the property) under that belief.''   On the other hand, it may reasonably be presumed that an alienee of property who has taken it with the notice that the records give him of an existing judgment encumbering it as a lien and which can, at any moment, be executed against it, has so taken it, as regards price paid and precautions for protection, with reference to the existence of the judgment ; just as he would take it with reference to any other existing lien or encumbrance of which the law would require him to take notice. .

Now, under our statutes which have been referred to, the law as it now stands, and as it stood at the date of the original judgment in the case, neither raises nor suggests any presumption of satisfaction or release of a judgment during the period of twelve years that it remains a lien on the real and leasehold property of the judgment debtor.   During that period it is unnecessary to have *scire facias* proceedings to revive the judgment for the purpose of executing the same, for the statute now provides, and did so provide at the date of the original judgment here, that execution may issue ''at any time within twelve years from the date of judgment,'' or that it ''may be otherwise proceeded with within twelve years from its date.''   So that the judgment is continued and invested with its full ''active energy'' during the full period of twelve years.   It is also further provided ''that at any time before the expiration of twelve years from the date of any judgment or decree, or in case of the death or marriage of any defendant in the judgment, the plaintiff shall have right to have a writ of *scire facias* to renew or revive the same.''   When, therefore, a purchaser, or alienee, takes property subject to the lien of a judgment under our present statute law, he does so with notice of the existence of an active, live judgment upon which process of execution may issue at any moment.

There is no fiction to excuse any want of care. Not only so, but he has notice that the judgment may, by the express terms of the statute, be revived by *scire facias* at any time during the twelve years and so have its "active energy" continued indefinitely. Is it not reasonable to suppose that a purchaser in taking property under such circumstances has provided for his own protection? And ought the law not to require this of him rather than expose the plaintiff in the judgment to further expense and the risk of further litigation with such purchaser or alienee by exacting the giving of a notice to him of the rights of the plaintiff under the judgment before they can be enforced against property taken subject to those rights? Would it not be more just and reasonable to treat him as already having notice of these rights?

The rights of a plaintiff in a judgment under our present statute law, with respect to continuing the effectiveness of the same, may be likened to his right to issue an execution " to lie " and renewing the same from term to term whereby the judgment may be kept alive and operative for an indefinite time. *Hagerstown Bank* v. *Thomas et al.*, 35 Md. 511. Here, according to the authority just cited, the judgment creditor by the proceeding of issuing an execution " to lie " preserves the effectiveness of the judgment and its priority over subsequent lienors ; and for the same reason he would be protected against subsequent purchasers. This reason must be that the law requires all parties to take notice of the rights of the judgment creditor who by the proceeding of having execution issued and repeated from term to term puts on record notice of his rights. Why would it not be even more consonant with reason to require of all parties to take notice at their peril of the rights secured to the judgment creditor by our present statute law as to continuing the effectiveness of his judgment when they are notified by the public records of the existence of a live, active judgment and by the law of the right of the party holding the lien to have it renewed and kept indefinitely in active force? This would seem to be in accord with the spirit and policy of the legislation in question ; the

object of which was to promote convenience and diminish expenses to suitors in using the process of the Courts by simplyfying and making less cumbrous the proceedings which events subsequent to the judgment sometimes made necessary, as the law formerly stood, to enable the fruits of a judgment to be realized. The inconvenience and delay of having to resort to *scire facias* proceedings in many instances where it was formerly required are now dispensed with and avoided— the statute providing the easy and summary mode of a suggestion in writing upon the record of the fact necessary to appear in the further prosecution of rights under the judgment. In case of the death or marriage of any defendant a *scire facias* may still be issued to revive the judgment against, and bring in the necessary parties, and at any time within twelve years from the date of the judgment "the plaintiff shall have the right to have a writ of *scire facias* to renew or revive the same." It is not in terms provided that alienees shall be served with notice of the *scire facias* proceeding, and this is not without significance in legislation which provided for making a judgment live and active during the whole twelve years that it is provided the judgment shall remain a lien; when, as we have seen, there were decisions to the effect that when lands subject to the lien of a judgment were alienated while the judgment was alive and active it could be revived by *scire facias* so as to affect the lands so alienated without making the alienees parties to the proceeding. If it was not intended to preserve the whole effect of such a judgment it would have been proper to employ terms of modification or exclusion. The foregoing considerations require, it would seem, that the principle in the ruling in *Murphy* v. *Cord*, *supra*, should be applied in the construction of our present statute law regulating the issuing of a *scire facias* to revive a judgment and that it ought to be accordingly held that, where a judgment creditor avails of the right to have *scire facias* to revive his judgment within the twelve years from the date thereof, it is not necessary that he should bring in and make parties to the proceeding the alienees of the real or leasehold

estate of the judgment debtor to whom such estate has been conveyed after the judgment has become a lien thereon. This view of the case makes it unnecessary to discuss or decide the question, which was argued, whether the garnishee under the title which she has attempted to show to the property upon which the attachment in this case was laid is, in the purview of the law, a terre-tenant of that property.

If the foregoing views be correct there is no error in the ruling in which the trial Court refused to sustain the motion to quash the attachment in this case.

The grounds upon which the motion was based are all at variance with these views. As to the first three grounds, the extent to which they are supported by the evidence is that the title to the property upon which the attachment was levied devolved upon William Coath, one of the defendants in the case, as distributee of the estate of his mother, pending the original judgment which was revived by proceeding on *scire facias ;* and that prior to this proceeding to which the garnishee was not a party the property had been assigned by him and subsequently to his assignment conveyed by deed from the administrator of his mother's estate to the garnishee. It would follow from the views herein expressed that these facts could not avail to defeat the attachment. The fourth ground of the motion did nothing more than to set out and detail these facts. In reference to the first exception the prayers of the defendant were in my judgment properly rejected. There was evidence to sustain the verdict, and evidence sufficient to entitle the plaintiffs to condemnation of the property, which was the subject of the levy and which was described in the sheriff's return in the case. The first two prayers of the defendant assert propositions to the contrary of this. The third prayer was based on the facts herein already recited in disposing of the motion to quash as being the basis of the allegations in the first three grounds of the motion which, as we have seen, do not support the legal conclusion deduced therefrom by the prayer. The prayer of the plaintiffs may have been open to criticism in its assump-

tion of some of the facts which were embodied therein but no special exceptions were filed, and it was substantially correct in the legal proposition it asserted.  After rehearsing the facts which had appeared in evidence other than those that appeared on the face of the proceedings on the attachment it in effect asked the Court to rule as matter of law that the one undivided third interest which passed to William Coath as distributee of his mother's estate was subject to the lien of the plaintiff's judgment and liable to condemnation under the attachment, notwithstanding the transfer of this interest by him to the garnishee by the assignment of the 30th of January, 1894, and the subsequent deed by him as administrator, dated the 23rd of April, 1894, to the garnishee and Ella C. Dunlap.  This legal conclusion is in accord with the views expressed herein.

I am of the opinion the judgment below ought to be affirmed.

(Filed August 14th, 1901.).